UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN RINCON, | ) Case No. CV 12-10583-PJW |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## I.
## INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") benefits. He claims that the Administrative Law Judge ("ALJ") erred when she failed to properly consider the opinion of two doctors and when she relied on the vocational expert to conclude that there were sufficient jobs in the economy that Plaintiff could perform. For the reasons explained below, the Court concludes that the ALJ did not err.

## II.

## SUMMARY OF FACTS AND PROCEEDINGS

On May 5, 2008, Plaintiff applied for SSI, alleging that he been unable to work since May 7, 2004, due to severe pain in his leg, back, and hip, and mental/psychological problems. (Administrative Record ("AR") 132, 265-67, 291, 304.) After his application was denied, he requested and was granted a hearing before an ALJ. (AR 151-55, 159-61.) On October 15, 2009, he appeared with counsel and testified at the hearing. (AR 112-31). On February 2, 2010, the ALJ issued a decision denying the application. (AR 136-43.) Plaintiff appealed to the Appeals Council, which reversed the ALJ's decision and remanded for a new hearing. (AR 149-50.) On August 10, 2011, a different ALJ held a second hearing, during which Plaintiff appeared with counsel and testified. (AR 67-111.) On August 26, 2011, the second ALJ issued a decision denying Plaintiff's application. (AR 27-49.) This appeal followed.

## III.

## DISCUSSION

In his first claim of error, Plaintiff alleges that the ALJ erred when she rejected the opinion of treating physician Richard Ross, who determined, essentially, that Plaintiff's physical impairments prevented him from working. For the reasons set forth below, the Court concludes that the ALJ did not err.

The ALJ set forth a thorough analysis of the medical record, including all of the doctors' opinions and the reasons why she accepted some over others. (AR 33-35, 40-42.) As to Dr. Ross, the ALJ pointed out that neither Dr. Ross's records or the other medical records supported the disabling limitations found by Dr. Ross. (AR

41-42.)  She noted, for example, that, though Plaintiff's main complaint was complications following a gunshot wound and surgery to repair a broken femur in 2004, by May 2005, Plaintiff's surgeon had released him to work.  (AR 41.)  She also noted that Plaintiff did not require any treatment between 2005 and 2007 and that the treatment he did receive from Dr. Ross was fairly conservative, consisting of pain medication and heat and ice.  (AR 42.)  The ALJ also found that Dr. Ross's findings were contradicted by the examining physician Frank Petrigliano's findings, who noted that Plaintiff had no deficits in neurological functioning or range of motion and no signs of atrophy in his legs.  (AR 42, 375-79.)  Finally, the ALJ pointed out that it appeared that Dr. Ross was simply taking Plaintiff's claims at face value and reiterating them in his report (AR 42), which was significant because the ALJ found that Plaintiff was not credible, a finding Plaintiff has not challenged here.

These were all legitimate reasons to question Dr. Ross's findings and they are all supported by the record.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (affirming ALJ's rejection of doctor's opinion of limitations where doctor's notes and observations contradicted that opinion); *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (holding ALJ may use claimant's failure to seek treatment as basis for finding complaint exaggerated); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (citations omitted).  As such, the ALJ's decision to discount Dr. Ross's opinion based on these reasons will not be disturbed.

Plaintiff makes a similar complaint about the ALJ's rejection of consulting psychiatrist Edward Ritvo's opinion who concluded that Plaintiff was psychotic and, as a result, moderately limited in his ability to perform basic work functions. (AR 528-33.) The ALJ rejected Dr. Ritvo's opinion and relied, instead, on the opinions of the medical expert, Dr. Peterson, and consulting doctors Aguilar and Sherrill, who concluded that Plaintiff was not so limited. (AR 38, 70-91, 370-74, 515-25.) Plaintiff contends that this was error.

The Court, again, sides with the Agency. The ALJ set forth in detail the treatment Plaintiff received for his mental/emotional/ psychological complaints and the opinions of the doctors and social workers who had treated and/or examined him. (AR 35-39.) She also explained her reasons for discounting Dr. Ritvo's opinion. She noted, for example, that Plaintiff never complained about psychiatric problems in reports that he submitted in connection with his application for SSI nor did he report taking psychiatric medication at that time. (AR 37.) She also noted that Dr. Ritvo's findings of moderate deficits were not supported and, in fact, inconsistent with by Dr. Ritvo's own clinical findings as well the findings of the other examining doctors. (AR 37.) Finally, and importantly, the ALJ pointed out throughout her analysis how Plaintiff had deliberately exaggerated his condition to appear more impaired than he was, rendering most of the objective tests that were performed on him worthless. (AR 37-39.) For example, Plaintiff told Dr. Ritvo that he constantly experienced hallucinations, both visual and auditory. (AR 528.) Despite the fact that it did not appear to Dr. Ritvo that Plaintiff was experiencing "internal stimuli" during the examination, he accepted Plaintiff's report at face value and concluded that

Plaintiff was psychotic. (AR 531-32.) The ALJ rightly questioned this conclusion and properly determined that Drs. Aguilar, Sherrill, and Peterson more accurately captured Plaintiff's condition. *See*, *e.g.*, *Valentine v. Commissioner*, 574 F.3d 685, 692-93 (9th Cir. 2009) (affirming rejecting of treating doctor's opinion where it was contradicted by doctor's own treatment notes); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (holding unexplained gaps in medical treatment may be basis for adverse credibility finding); and *Morgan v. Commissioner,* 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been properly discounted.").

Finally, Plaintiff complains that the ALJ erred when he accepted the vocational expert's testimony that there were a significant number of jobs in the economy that Plaintiff could perform, i.e., a touch-up screener (2,000 locally, 75,000 nationally), charge account clerk (2,100 locally, 55,000 nationally), and jewelry stone setter (2,000 locally, 90,000 nationally). Plaintiff points out that, during cross examination, the vocational expert conceded that, according to *Job Browser*, a commercial software program that analyzes jobs data, there were no local stone setter jobs and only three nationally. (AR 105.) He argues that this so undermines the vocational expert's testimony as to require remand on the issue.

The Court disagrees. Generally speaking, an ALJ is entitled to rely on a vocational expert's testimony regarding the number of jobs in the economy. *See* 20 C.F.R. § 416.966(e) (authorizing ALJs to rely on vocational expert testimony to determine occupational issues); *Bayliss*, 427 F.3d at 1217-18 (upholding ALJ's reliance on vocational

expert's testimony regarding job numbers).  In fact, a vocational expert's testimony amounts to substantial evidence on vocational issues.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001) (testimony of vocational expert constitutes substantial evidence). And a vocational expert is not required to provide a foundation for this testimony as her expertise alone is a sufficient foundation. *Bayliss*, 427 F.3d at 1218.  For this reason, the ALJ's reliance on the vocational expert's testimony that there were a significant number of jobs in the economy was supported by substantial evidence and is affirmed.

Further, as the Agency argues, even were the Court to accept Plaintiff's argument that there were, essentially no stone setter jobs in the economy, there is no evidence in this record calling into question the vocational expert's testimony regarding the other two positions for which the vocational expert testified there were plenty of jobs.  Thus, this argument, too, is rejected.[1]

As to Plaintiff's argument that *Job Browser* is the ultimate source of jobs data, the Court disagrees.  As the Court has previously noted, *Job Browser* lists raw data for job numbers and also provides adjusted and weighted figures.  The raw numbers approximate the vocational expert's numbers.  The adjusted and weighted figures are significantly lower than the vocational expert's numbers.  But there is no explanation as to how *Job Browser* arrives at the lower figures nor was one provided at the administrative hearing.  Absent expert

---

[1] In the Joint Stipulation, Plaintiff's counsel has supplied the Court with the numbers for the other two jobs.  This, of course, is not part of the administrative record and is not evidence.  As such, the Court has not considered it in reaching its decision.

6

testimony on that subject, there is no basis to question the vocational expert's testimony based on the *Job Browser* numbers that were discussed at the hearing.[2]

## IV.
## CONCLUSION

For these reasons, the Agency's decision is affirmed and the action is dismissed with prejudice.

IT IS SO ORDERED.

DATED: January 3, 2014

/s/ Patrick J. Walsh

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\RINCON, 10583\Memo Opinion and Order.wpd

---

[2] It does not appear that the vocational expert was relying on *Job Browser* when she initially offered her opinion as to the number of jobs that were available in the economy. (AR 101-07.)